First case of the day is B&R Construction v. Expotractor Corp. for the appellant, Ms. Myers for the appellee, Ms. Lawless. You may proceed. You may cease the court, counsel. My name is Barbara Myers. I'm here on behalf of the plaintiff appellant B&R Construction. The main issue in this case is whether an Illinois court can exercise jurisdiction over a foreign corporation when the plaintiff has alleged that that foreign corporation has intentionally defrauded the Illinois resident. It involves the application of the Illinois long-arm statute, specifically sections 735 ILCS 2-209A2, which permits an Illinois court to exercise personal jurisdiction when a foreign defendant has committed a tortious act within the state of Illinois, and section 2-209A7, which, as I'm sure you're aware, permits Illinois courts to exercise jurisdiction when the cause of action is the making or performance of any contract or promise substantially connected with the state of Illinois. And, of course, even if personal jurisdiction is permissible under the long-arm statute, it still has to also be permissible under the due process clause. And we, of course, submit that jurisdiction is appropriate both under the long-arm statute and that it comports with the due process clause as well. Because this is a matter of law, of course, the standard of review is de novo, and any conflict in the affidavits must be resolved in favor of the plaintiff for purposes of establishing a prima facie case of personal jurisdiction. So, for example, in the record we have the affidavits of the president of B&R Construction, Mr. Orville Kirkendall, and we also have the affidavit of Julio Lara, who's the president of Expo Tractor. So when Mr. Kirkendall's affidavit says, well, Expo Tractor confirmed that I was buying a 2004 model year excavator, and Mr. Lara says, no, no, I told him it was a 2001, that conflict has to be resolved in favor of Mr. Kirkendall's assertion that Mr. Lara lied to him. The first section of the long-arm statute I'd like to discuss is 209A7, which, of course, concerns the making or performance of any contract substantially connected with the state of Illinois. And to determine whether this applies, the court is to look at a number of factors, including who initiated the transaction, where it was negotiated, where the contract was formed, and there is some precedent that suggests that the state where the last act is necessary to form the contract is also an important element. And I think it's important to distinguish between where the contract is formed and where it's to be performed. And in this case, the record shows that while it's true that plaintiff initiated the transaction, it was negotiated in both Illinois and Florida, and this was not a one-way negotiation, unlike in some of the other cases that the appellee has cited, there was an exchange of communication between the plaintiff here in Illinois and the defendant in Florida. It wasn't just a question of the plaintiff calling up the defendant and saying, hey, I want to buy a tractor. You had affirmative representations being made from the Florida people to the Illinois people saying, we've got this excavator, it's a 2004, it's got a thumb, it's only got this many miles on it, buy our tractor. And I'll get to why that's, in my opinion, that satisfies the purposeful availment requirement, but we'll get to that in a minute. So in this case, again, the contract was negotiated both in Illinois and in Florida, and the last act, which was necessary to turn it into a contract, was Mr. Kirkendall's acceptance of Mr. Lara's offer, and that occurred in Illinois. We also have Mr. Kirkendall sending money from an Illinois bank, Mr. Lara accepting the money from the Illinois bank. So because of those factors all coming together, that is why this is a contract which is substantially connected with the state of Illinois. And in addition, even if jurisdiction does not attach under Section 209A7, Illinois can still exercise jurisdiction under 209A2. Under this section, the question is whether the defendant directed its actions to have an effect in Illinois. And here, the answer to that is clearly yes. The plaintiff is alleging that the defendant intentionally misrepresented the model year and other material facts about the excavator in order to induce the plaintiff to buy it. The defendant knew they were dealing with an Illinois customer, they knew that the excavator would end up here, and that any injury from their misrepresentation would register here in Illinois. And again, Mr. Lara, the president of Expo Tractor, communicated with Mr. Kirkendall, who was here in Illinois, as part of this fraudulent scheme. And the fact that this was a fraudulent scheme, that he was making these affirmative statements in order to induce an Illinois plaintiff to enter into this contract, that also bears on the due process analysis. Because, of course, for Illinois to exercise jurisdiction over Expo Tractor in this case, it's only permissible if it comports with the due process clause of both the U.S. and the Illinois Constitution. And of course, those are coextensive, at least as far as that fairness analysis is concerned. So we submit that the defendant had or required minimum contacts with the state of Illinois, such that there was fair warning that it might be hailed into an Illinois court. The cause of action arose out of the defendant's fraudulent contacts with the state of Illinois, and it's reasonable to require the defendant to litigate here in Illinois. As far as the minimum contacts are concerned, the key here is that the communications that the plaintiff and the defendant had, from the defendant's end, they were aimed at Illinois, they were aimed at an Illinois resident with the goal of getting this Illinois resident to do something. Well, how was it specifically aimed at the plaintiff here? Do you mean the communications from the defendant? Yes. The specific communication I'm talking about is, again, we can see that the plaintiff is the one who made the initial contact with the defendant. But the defendant then made affirmative communications, affirmative representations to the plaintiff to say, hey, yeah, I've got the tractor, come buy this one. And even if you accept Mr. Lara's version of events, which you don't have to and probably shouldn't because they do conflict with the plaintiff's, he claims that he, again, when he realized he didn't have the 2004 tractor, that he reached out to the plaintiff and said, oh, but I've got this 2001 one anyway. So even if you accept his version of events, you still have him affirmatively reaching out to the state of Illinois and saying, hey, I want to do business with you. I want to make this transaction happen. We submit that that was a fraudulent communication and that the fact that it was fraudulent means that he had the, it implicates Illinois' policy interest in protecting its residents from fraud and from misrepresentations and from unfair business dealings. I think that one case, there's a United States Supreme Court case that's, I mean, the facts, of course, are not identical because it was a defamation case, but that's Calder v. Jones. And in that case, even the Supreme Court held that even though the tortious acts themselves were committed entirely within the state of Florida, because that's where the defamatory article was written, because it was aimed at somebody who was in California, because it had an effect on them in California, California still could exercise personal jurisdiction over those Florida defendants. And we believe that this is a similar situation. You've got somebody down in Florida who's doing something in Florida that he, it's targeted at an Illinois resident that he knows is going to have an effect on an Illinois interest and so personal jurisdiction is appropriate in Illinois because, again, you've got somebody reaching across, purposefully availing themselves of the opportunity to do business in Illinois and therefore subjecting themselves to personal jurisdiction in the state. Is it more or just as accurate to say your client purposefully involved themselves in Internet communication knowing that the person they're buying from is in a far distant state, knowing the equipment is in a far distant state, knowing any valuation or appraisal of it or looking at it is going to have to occur in a far distant state and knowing they're going to have to send someone after it to get it and bring it back to Illinois. I mean, that sounds like targeting as well. I mean, it's not the right word to use, but I mean it's very specific. Hey, I'm responding to your company's Internet circulation and saying, I want this tractor. Now, we can talk about price and so forth, but I want this or this X screen. I think that's a fair question, Your Honor, and I suppose my response to that is that purposeful availment is a two-way street and so if our folks were trying to purposefully avail themselves of this backhoe that was in Florida. The difference is, though, yours is purposeful. The defendants is spreading a blanket across the United States, I suppose. I could care less who wants the excavator. They're in the Aleutian Islands if they want the excavator. It's okay with me. My response to that is when the defendants, again, when they had this communication with the plaintiffs who were in Illinois, that's when they were purposefully availing themselves of the opportunity to sell to somebody in Illinois. This machine was advertised in an online listing, Machinery Trader. If instead of that, let's say it was a classified print copy of the Miami Herald. The machine was in Miami, as I take it, and somehow your client got his hands on the newspaper and saw that this machine was down there and put aside whatever is in this affidavit of Lara about the bait and switch thing, what you're referring to there. I mean, there you have then a very localized advertisement. Makes it harder for you, right, in that scenario? You know, Your Honor, I'm not sure that it does. Because, again, what we're focused on is... Well, wait. I just want to make sure you understand what I'm suggesting here. That the excavator is advertised in a print copy of the Miami Herald. The machine is in Miami. It's being advertised for sale in the Miami Herald. And an Illinois buyer contacts the seller, goes down and buys it down there and brings it back. Do you think that the jurisdiction would lie in Illinois? Well, Your Honor, I think that it might if there were still communications between, again, Expo Tractor down in Florida and B&R up here in Illinois, where Expo Tractor was making these affirmative representations about the quality of the excavator. I think that it would make it a little more difficult because, again, you're right. Their advertising of it would be more localized. It's a garage sale. I have a book sale every year or two. I put an ad in the pantograph. The pantograph says, for the same price, we'll put it online. Well, the circulation of the pantograph from movies to normal is modest. The online circulation is probably modest. Somebody calls me and says, do you have such and such a book? And I say, yeah. I think it's a first edition. Have I submitted to jurisdiction in Massachusetts? Well, Your Honor, I don't know that that act alone would mean that you've submitted to jurisdiction in Massachusetts. Well, the guy calls me up and says, hey, do you have that book? What do you want for it? And I tell him what I want for it. And I tell him if he wants me to ship it to him, I will, but he has to send me the container. And I'm not responsible for the delivery. He's responsible for the delivery. Maybe he'll fly out there to get it because he wants that book. So I put in a garage sale ad and I've submitted myself to the jurisdiction of another state. Well, Your Honor, I don't think that the simple act of placing the garage sale ad is what would submit you to personal jurisdiction in a different state. So it's the next step. It would be a couple more steps down the line. It would be not only him calling you and you saying, yeah, I think I've got this first edition, but also you at some point sending him an e-mail, sending him a letter, sending him a picture of the book. And that would be in a different communication even than when he originally called you. It's him calling you, leaving a message saying, hey, I'm interested in the book, and then you, A, taking the step of deciding you want to defraud the guy, which, of course, I'm not saying you would. This is only in our hypothetical. But it's you deciding that you want to defraud this guy about your first edition. It's an airport paperback, but you're saying it's a first edition. You going online, finding a picture of the first edition, sending it to the guy, telling him that it's a first edition, and then him accepting your offer. Those are the kind of steps that we're talking about that make the exercise of personal jurisdiction proper. Because then you're taking affirmative steps to defraud somebody in another state. But the first step and the last step, you're throwing them out. In effect, who initiated it, and where's the last act? There can't be any question here, factually. You're making a good argument. Factually, your client initiated it, and your client came and got it. Well, that's true, Your Honor, but again... It's the stuff in between. We're saying it's the stuff in between that counts. That's very artful. That was my phrase, not yours. So again, because of the stuff in between, it's our position that that is what's of paramount importance here. That is when personal jurisdiction attaches. Because the stuff in between is ultimately what the cause of action of the complaint is. We're not talking about a normal breach of contract case where one person didn't perform. We're talking about something where he didn't sell them what he said he was going to sell. Because we submit that the minimum contacts exist, the cause of action arises from those minimal but fraudulent contacts. And there's nothing to suggest that it's not reasonable to require Expo Tractor to litigate here. Mr. Lara submitted an affidavit. He didn't say anything in his affidavit that it would be some kind of hardship for him to come up here and explain himself. There's nothing in his affidavit that says that. Furthermore, the machine itself is here in Illinois for inspection. I don't know if the trial court would want to go out and look at this excavator or if that would be helpful, but that is one of the factors for whether it's reasonable to require someone to litigate in a particular place. That assumes that a judge knows what he's looking for. Again, I don't know... How do you turn this thing on? Well, in the condition it was, I don't know if you could turn it on. But the other factor is at least two of the key witnesses in this case are going to be Mr. Kirkendall and Mr. Wright. Mr. Reitz is the fellow that he had actually go get the tractor. Both of those men's affidavits indicate that they're here in Illinois. There's no reason why it's more reasonable to litigate this thing in Miami than it is to litigate it in Springfield. Well, now you're shading into a form non-convenience argument that you first have to establish the personal jurisdiction. Well, maybe it's a preemptive strike, Your Honor. I don't know. Finally, my last argument for why personal jurisdictions should attach in this case, and I'll keep this brief. Again, as we explain more further in our brief, it's in Illinois' interest to protect its residents from fraud, from misrepresentation, from people out there who are trying to sell you things that are not what they claim to be. And Illinois' interest in protecting its residents is an important prong of whether it's reasonable for Illinois to exercise jurisdiction in this case. And, of course, we submit that it is. So in conclusion, because this case concerns a contract which was substantially connected with Illinois, a tortious act intentionally directed at Illinois' interests, and because the notions of due process are satisfied by keeping this case in Illinois where it belongs, we respectfully ask this Court to overturn the decision of the trial court and let this case proceed in the state of Illinois. Unless you have any more questions for me, that concludes my argument. I don't believe so. Thank you. You'll have additional time on rebuttal. Ms. Wallace. May it please the Court. Good morning, Your Honor. Good morning, Counsel. My name is Colleen Wallace, and I represent the Applee Expo Tractor in this case. And the appellant has made several arguments, and most of them are concerning the communications between Expo Tractor and B&R Construction. It was conceded by the appellant that in this case it was B&R Construction that looked at a global website that was not targeted towards Illinois residents in any way, shape, or form. There has been no allegations of that. And it was also the plaintiff in this case that went to Florida to pick up this piece of equipment. The whole negotiation process involved some, it seems as though there's discrepancies as to what it involved, but it was phone or email, and that can be conceded by both parties. That, yes, plaintiff picked up the phone and contacted the defendant in this case, who is a Florida corporation with 98% of its sales outside of the United States. So, in this circumstance, the Florida corporation has no employees, no offices here, has never even traveled to Illinois, and did nothing in the state of Illinois. That's the important fact that the appellant is overlooking in this circumstance. Purposeful availment is, it focuses on the defendant's activities within the state of Illinois, not the plaintiff's. It's very true that the plaintiff wired money from Illinois to Florida, but that doesn't affect my client. My client, it didn't matter where the money was coming from, it was going to Florida where they were located. They had to do nothing under the contract in the negotiations or in the performance of the contract in Illinois, other than picking up the phone and sending an invoice, which is at issue. I'm sorry, I didn't mean to interrupt. Finish your thought, and then I do have a question. And the invoice at issue is also important. There have been many allegations that this was clear fraud, and they had no idea, except the serial number that's identified on the invoice, it is uncontested. That specifically identifies a 2001 excavator. It is standard practice in the business of buying machinery like this that you receive a serial number so that you can identify exactly that excavator you're buying. Because other than that, it's just an advertisement that's on the internet, or in the newspaper, or any other advertisement. It's important also to note that the Fourth District has repeatedly and consistently identified what is necessary in this setting under A2 and A7. A7 is the contract part of this. Xcel Energy is the Fourth District 1992 case that involves, and I believe is the controlling precedent in this case today. It involved Oklahoma equipment, oil and gas equipment. And the plaintiff in that case contacted the defendant in Oklahoma. The corporation in that circumstance had absolutely no ties to Illinois, and never had to come to Illinois, never had to do anything in Illinois. In that case specifically, the plaintiff contacted the defendant after looking at an advertisement,  Conversations occurred between the parties over the phone. Plaintiff traveled to the defendant's location in Oklahoma to retrieve the equipment. Came back and realized that the equipment allegedly was not what they had purchased. In that case, the Fourth District did not even look at A2 or A7 specifically in the case. The Fourth District stated, even though we believe personal jurisdiction would not fall under the long-arm statute, we believe that this wouldn't comport with due process even if it did. Okay, let me jump in here. It would seem that your best case scenario is to have this treated in a manner similar to an eBay purchase, where you're basically talking about online viewing of an advertisement, and then a response to the advertisement by the buyer, and that's what happens. It's almost unilateral. I mean, you're wanting it to be that the buyer is the one initiating the contact, and this would make it analogous to an eBay situation or some other online form of purchasing. And to me, it seems that where your client may have shot himself in the foot, Laura, is in the affidavit. He indicates that after the buyer contacted him, he says, no, that excavator is gone. We've sold that, but we've got this other one over here. So now you've taken it out of the realm of that simple buyer initiating contact with the seller and saying, okay, I want that. That product that he was responding to in terms of the advertisement has been sold. It's no longer there. Now you have the seller promoting another product that he has. Now you do have this interplay going on, and it's not so streamlined as you might want it to be. So how do you respond to that? Now you have a different product in play, not the one. According to your client's affidavit, not the one that the buyer was responding to in terms of the machinery trader ad. And your client is trying to sell this different product. Now isn't there now some contract negotiation going on and something being initiated by your client as opposed to the buyer? I would respond to that, and I believe this is just part of the negotiation. Part of what? Of a certain piece of equipment. And I believe my client was simply responding to somebody directing their activities to him in Florida. And he was saying, hey, you called about this. We have one that's similar. It's a 2001. I can give it to you for this price. I find that to be very analogous to me contacting the defendant in that case saying, I want this for $50,000 even though it's on the market for $60,000. It's just part of negotiations. To me it does not matter what the actual equipment was that they were negotiating over the phone. It's the activities that the plaintiff did directing towards Florida. It's not as if in this circumstance the defendant and my client was saying, oh, I have something in Illinois that's a 2001 that you can have there in Illinois and you can pick it up there. He was simply having a negotiation with the plaintiff and being a smart businessman saying, I don't have that product, but I do have something similar. Okay. I sold that excavator, but I've got some property over here that would make a nice getaway home for you. You want to take a look at this? All right. So you're saying that it's just a matter of the opening salvo was as to this excavator that was sold and then after that anything's fair game? Well, in this circumstance it's not anything was fair game, but also the thing that's important is what the defendant did to direct his activities to a specific Illinois resident and what he did in Illinois. It didn't matter if it was the 2004 or 2001 in this circumstance. It doesn't change the fact the plaintiff is the one that contacted the defendant. The plaintiff is the one that went to the defendant's residence in Florida to retrieve the equipment. And also I think it's important to note that the communications that occur between the plaintiff and defendant, the fourth district in Xcel Energy, the second district in Boulder, that was a Florida DOT purchase, the fourth district in Isringhausen regarding a Florida home that they were purchasing. So that goes back to your hypothetical in that situation. The districts have unilaterally stated that it is not just the negotiation. Mere phone calls and faxes and emails is not enough to comport personal jurisdiction and to find purposeful activities towards the resident in Illinois in those circumstances. It's also important to distinguish only two cases that have been cited by the plaintiff in this case. One is a fourth district 1974 case. That was before the long arm statute in this circumstance had even been enacted. And in those cases the defendant directed actions in Illinois. Specifically, the defendant initiated the contract. The defendant applied for a loan in Illinois. The lease was pledged and the money for the equipment was provided by an Illinois bank. And that is clearly distinguishable from the facts in this case. My client did not do anything in Illinois. There's no loan. There was no initiating the contract. There was no performance of any or any contemplation of performance under this invoice that was going to occur outside of Florida. And the other Seventh Circuit case that was dealt with a faulty airplane and it was in 1992. The plaintiff has repeatedly asserted that that was the case that she can rely on for distinguishing a tort and the contract. That there's a different standard that the court has to look at if it's a tort as compared to a contract case. It isn't. It's still purposeful availment by the court standards. And in those circumstances you're looking directly at the activities of the defendant in the resident state. And also it's important to note the Seventh Circuit case was founded not, it was not held based on the tort. The court, Seventh Circuit actually took time to say, hey, to identify where a tort occurred is hard in this circumstance. Is it the last act that occurred in Massachusetts? Or is it where they discovered when the equipment was faulty in Illinois? And the court said, but the long arm statute just created another basis in order to find for, and that's A7, which was the contract, the substantial connection to a contract. And the court found in that case that yes, everything was enough that the plaintiff did bring himself to Illinois. Now what I will note is that was 1992 before the case law has been expanded by the appellate districts here in Illinois. And I will once again, and I have outlined it very clearly in the brief, how clear the facts are to the Excel Energy case as well as the Bolger case. And Bolger is a 2007 Second District that relies upon Excel Energy as well. And it's upholding the idea that when a plaintiff initiates a contract and contemplates performance in that defendant's state, and the defendant does not do anything other than enter into a contract with an Illinois resident, it's not enough under, specific for personal jurisdiction over that non-resident defendant. Either under the long arm statute or, more importantly, under due process. Excel Energy made the point, the Fourth District made the point in Excel Energy, that there is clearly not enough when the plaintiff does all the actions towards a resident state, such as Florida, to be able to hold that non-resident defendant here in Illinois. And I would also make a point to come out with that the Excel Energy case was discussed in one of the cases, Pelican, that was cited by the plaintiff in this case. And in that case, the Pelican court, and it was a consumer fraud case, similar to the one that we're here on today. And in Pelican, what was different was the defendant actually did local direct media to Illinois residents, specific direct mail and advertisements. The defendant also shipped the pens that were at issue, the faulty pens at issue, to Illinois residents. And the court in that case made a specific distinction saying, this is not like the defendant in Excel Energy that didn't initiate the contract, didn't ship the products to Illinois. This is distinctly different because this person sought out, and this defendant sought out and purposely availed himself of Illinois by looking directly for Illinois residents and shipping the products directly to Illinois. Once again, it is very clear by the affidavits that the plaintiff in this case is conceding the fact that they initiated the contract, that the contemplation and performance of the contract was only going to occur in Florida. There was nothing that the defendant had to do in this contract in Illinois. And for those reasons, the defendant requests that the court affirm the trial court's decision in this case. Your Honor, did you have any further questions for me? There don't appear to be anything. Thank you very much.  Just very briefly in rebuttal, I'd just like to take a moment to distinguish some of the cases that Counsel Ford, the defendant, has cited in both the Bolger case, that's the second district case, and Isringhausen, which is the fourth district case. In both of those cases, the contracts at issue had a choice of law provision that favored the non-Illinois state, which actually I think was Florida in both cases. I don't know what it is about Florida. Both of those contracts had a choice of law provision that specifically stated the law of Florida will govern this agreement. And so in both of those opinions, when the second district and the fourth district respectively looked at the facts of those cases, they discussed how those choice of law provisions did affect their decision in saying that there was no personal jurisdiction. And in this case, the parties didn't have a written contract such as the ones in Bolger and Isringhausen, so there was no choice of law provision. As far as Accel Energy is concerned, I believe that in that opinion, the court goes into some detail about how the plaintiff in the record had attached a list of all of the phone calls that they had made to the out-of-state defendant. And the court discussed how that was, as you were just discussing now, a very one-way stream of communication. In this case, you've got more back and forth than was at evidence in Accel Energy. Again, in Accel Energy, the plaintiff said, well, we called them a bunch of times and then we went and got the excavator. Here, we've got, again, specific affirmative misstatements of material fact coming from Florida directed at an Illinois resident with the intention of affecting an interest in the state of Illinois. For that reason, we respectfully ask that the court overturn the decision of the trial court and let this case proceed. Thank you. Thank you. We'll take this matter under advisement and stand in recess for a few moments.